**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 19 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

DOUGLAS G. DRY; JUANITA
MCCONNELL; ROSIE BURLISON,

     Plaintiffs - Appellants,

vs.

UNITED STATES OF AMERICA;
BRUCE BABBITT, in his official
capacity as Secretary of Interior; ADA
E. DEERE, in her official capacity as
Assistant Secretary of Interior for
Indian Affairs; JIM FIELDS, in his
official capacity as the successor
Muskogee Area BIA Director; PERRY
PROCTOR, in his official and
individual capacities; DENNIS
SPRINGWATER, in his official and
individual capacities; KAREN
KETCHER, in her official and
individual capacities; CURTIS D.
WILSON, in his official capacity as
the BIA Contracts Officer; LARRY
MINGS, in his official and individual
capacities; BOB RABON, in his
official and individual capacities;
ROBERT L. RABON, in his official
and individual capacities, KIM REED,
in her official and individual
capacities; HOPPY DENISON, in his
official and individual capacities;
BILL BARROW in his official and
individual capacities; MIKE
RUSSELL, in his official and
individual capacities; STEPHEN

No. 99-7110

FLOWERS, in his official and individual capacities; CHRIS WELCH, in his official and individual capacities; KENNETH JOHNSON, in his official and individual capacities; BLAKE JOHNICO, in his official and individual capacities; CITY OF TALIHINA; JACK ENGLAND, in his official and individual capacities; MALCOMB WADE, in his official and individual capacities; NIKY HIBDON, in her official and individual capacities; LLOYD JAMES, in his official and individual capacities; JOHN WHEAT, in his official and individual capacities; NAOMI O'DANIELS, in her official and individual capacity; CITY OF CLAYTON; TERRY BELL, in his official and individual capacities; ROWLAND HALL, in his official and individual capacities; MIKE VAN HORN, in his official and individual capacities; REBECCA JOHNSON, in her official and individual capacities; DARREL KIRKES, in his official and individual capacities; JIMMY LONG, in his official and individual capacities,

Defendants - Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-113-B)**

---

Douglas G. Dry, Wilburton, Oklahoma (Scott Kayla Morrison, Clayton,

- 2 -

Oklahoma, on the brief), for the Plaintiffs - Appellants.

Peter Bernhardt, Office of the United States Attorney, Tulsa, Oklahoma, for Defendants - Appellees United States of America, Bruce Babbitt, Ada E. Deere, Jim Fields, Perry Proctor, Dennis Springwater, Karen Ketcher, Curtis D. Wilson and Larry Mings.

Eric D. Janzen (Charles D. Neal, Jr., with him on the briefs), Steidley & Neal, McAlester, Oklahoma, for Defendants - Appellees City of Talihina, Jack England, Malcomb Wade, Niky Hibdon, Lloyd James, John Wheat and Naomi O'Daniels, and for Defendants - Appellees City of Clayton, Terry Bell, Rowland Hall, Mike Van Horn, Darrel Kirkes, Rebecca Johnson and Jimmy Long.

Steven P. Shreder (W.G. "Gil" Steidley, Jr., on the brief), Steidley & Neal, McAlester, Oklahoma, for Defendants - Appellees Bob Rabon, Robert L. Rabon, Kim Reed, Hoppy Denison, Bill Barrow, Mike Russell, Steven Flowers, Chris Welch, Kenneth Johnson and Blake Johnico.

---

Before **BRORBY**, **MCKAY**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiffs-Appellants Douglas G. Dry, Juanita McConnell, and Rosie Burlison appeal from the district court's orders dismissing their claims against the federal and tribal defendants, and from the orders granting summary judgment to the City of Talihina and City of Clayton defendants. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

**Background**

Plaintiffs Douglas G. Dry, Juanita McConnell, and Rosie Burlison are members of the Choctaw Nation ("the Nation" or "the Tribe"). During the Labor Day Festival on tribal grounds in 1995, tribal police officers arrested Plaintiffs while they were distributing literature. Dry was transported to the City of Talihina; McConnell and Burlison were transported to the City of Clayton. All three were detained for two to three hours, after which they were brought back to Tuskahoma and charged in the Choctaw Court of Indian Offenses. Each plaintiff was charged with a number of crimes in the nature of disturbance of the peace and interfering with a police officer or resisting arrest.

Thereafter, Plaintiffs filed this lawsuit in United States District Court for the Eastern District of Oklahoma to recover compensatory and punitive damages, attorneys' fees, and costs. They asserted causes of action under the United States Constitution, the Federal Tort Claims Act ("FTCA"), 42 U.S.C. § 1983 ("§ 1983"), the Oklahoma Governmental Torts Claims Act, and three nineteenth-century treaties between the Choctaw Nation and the United States. As defendants, Plaintiffs named: (1) the United States, the Secretary of Interior, the director of the Bureau of Indian Affairs ("BIA"), and six other BIA officials (collectively, "the federal defendants"); (2) the Tribe's general counsel, prosecutor, and director of law enforcement, as well as seven other tribal law

enforcement personnel (collectively, "the tribal defendants"); and (3) the City of Talihina, the City of Clayton, both mayors, both jailers/police chiefs, and several other city officials, including the members of both city councils (collectively, "the city defendants"). In various orders, the district court dismissed all claims against the federal and tribal defendants and granted summary judgment for the city defendants. This appeal followed. We examine the claims against each set of defendants in turn.

## Discussion

## I.    **Claims Against the Tribal Defendants**

Plaintiffs' amended complaint asserts the same three claims against various subsets of tribal defendants, all of whom were sued in their official and individual capacities. Plaintiffs' first two claims are constitutional; the third invokes the FTCA. The first claim alleges that certain named tribal defendants violated the plaintiffs' First and Fifth Amendment rights to freedom of speech, freedom of assembly, due process, and equal protection. 1 Aplt. App. 95, ¶ 57 (Dry); id. at 109, ¶ 104 (McConnell); id. at 119, ¶ 134 (Burlison). The second claim asserts that certain tribal defendants deprived Plaintiffs of their "liberty without due process of law and deprived [them] of equal protection of the laws, in violation of the 4th and 5th Amendments of the Constitution of the United States." Id. at 96-

97, ¶¶ 63-64 (Dry); see also id. at 111, ¶¶ 110-11 (McConnell) (also alleging a violation of Plaintiff's Fourteenth Amendment rights); id. at 120-21, ¶¶ 140-41 (Burlison) (same). Third, the complaint alleges that certain tribal defendants "deliberately, intentionally and maliciously" committed several intentional torts against Plaintiffs, and seeks compensation under the FTCA. Id. at 101, ¶¶ 74-75 (Dry); id. at 116, ¶¶ 121-22 (McConnell); id. at 125, ¶¶ 151-52 (Burlison).

Upon a notice of substitution filed by the United States, the district court dismissed the FTCA claims against all but two tribal defendants and substituted the United States as party defendant. Fed. Aplee. Supp. App. at 5; see 28 U.S.C. § 2679(d)(1). Appellants' all-inclusive Notice of Appeal designates not only the district court's orders dated August 16, 1999, and September 30, 1998, but also "all other orders of dismissal, prior orders and rulings." 3 Aplt. App. 658. Plaintiffs, however, have failed to brief the propriety of the substitution, and we therefore deem their appeal of this issue to have been abandoned. See Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997).

In seven orders issued on September 30, 1998, the district court dismissed all remaining claims against the tribal defendants for failure to state a claim or for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(6), (b)(1). We review such dismissals de novo, applying the same standard used by the district court. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th

Cir. 1999) (failure to state a claim); Sac & Fox Nation of Okla. v. Cuomo, 193 F.3d 1162, 1165 (10th Cir. 1999), cert. denied, 120 S. Ct. 2657 (2000) (lack of jurisdiction).  We will affirm a 12(b)(6) dismissal "when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In conducting our analysis, we are obligated to "accept as true all the factual allegations in the complaint, construe them in a light most favorable to the plaintiff, and resolve all reasonable inferences in plaintiff's favor."  Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).

Our review of a dismissal under Rule 12(b)(1) depends on whether the motion was granted on factual or legal grounds.  See Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  In the first category, the movant challenges the "facts upon which subject matter jurisdiction depends."  Id. at 1003.  To resolve such a dispute, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing . . . ."  Id.  In the present case, the district court considered legal arguments not contained in the complaint, but did not rely on any evidentiary materials.  We therefore review the 12(b)(1) dismissals under the same standard applicable to the dismissals under 12(b)(6), see Seamons, 84 F.3d at 1231-32, accepting all factual allegations as true and according the plaintiffs the benefit of all reasonable inferences to be drawn

therefrom.  Holt, 46 F.3d at 1002-03.

On appeal, Plaintiffs urge us to accept the following five contentions. First, that "the Choctaw Nation is exercising contracted federal criminal jurisdiction because the Choctaw citizens did not grant criminal jurisdiction to the tribal government under the 1983 Choctaw Constitution." Aplt. Br. at 6.  Second, that "officers acting under federal contracted criminal jurisdiction are federal [and not] tribal officers." Id. at 7.  Third, that "the Bureau of Indian [A]ffairs contracting and overseeing federal criminal jurisdiction contracted to the tribe is liable for arrests performed in furtherance of the contract." Id.  Fourth, that "Choctaw citizens may seek compensation for injury pursuant to a treaty in federal district court." Id.  And Fifth, that "state municipal officers and municipalities are liable for holding prisoners for an entity that did not have jurisdiction to arrest the individuals." Id.  On the facts of this case, we find each argument to be without merit.

### A.    Tribal Immunity

Indian tribes "exercise inherent sovereign authority over their members and territories." Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla. , 498 U.S. 505, 509 (1991).  Due to their sovereign status, suits against tribes or tribal officials in their official capacity "are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress." Fletcher

- 8 -

v. United States , 116 F.3d 1315, 1324 (10th Cir. 1997) (citations omitted).

Plaintiffs have not argued that the tribal defendants have waived their immunity, nor have they pointed to any congressional abrogation thereof. The tribal officials are therefore immune from suit in their official capacities. The individual capacity claims against the tribal defendants are addressed below.

**B.    The Choctaw Nation's Criminal Jurisdiction Over Intratribal Matters Is Inherent In Tribal Sovereignty**

Plaintiffs argue that the district court erred in dismissing their claims against the tribal defendants because the tribal defendants are actually not "tribal" defendants at all, but rather, agents of the federal government. In        Bivens v. Six Unknown Agents of Federal Bureau of Narcotics    , 403 U.S. 388, 397 (1971), the Supreme Court held that individuals who suffer violations of the United States Constitution by agents of the federal government may sue for damages in federal court. Despite Plaintiffs' failure to cite     Bivens at any point in their brief, we construe their constitutional claims against the tribal defendants – alleged to be agents of the federal government – as     Bivens claims.

Plaintiffs' first contention on appeal is that "the Choctaw Nation is exercising contracted federal criminal jurisdiction because the Choctaw citizens did not grant criminal jurisdiction to the tribal government under the 1983 Choctaw Constitution." Aplt. Br. at 6. We read this as a two-part argument. First, Plaintiffs claim that the Choctaw Nation has no criminal jurisdiction over

its members.  Implicitly acknowledging that such jurisdiction is inherent in tribal sovereignty, Plaintiffs argue that the Choctaw Nation has waived that aspect of its sovereignty.  Id. at 9-10.  Second, Plaintiffs contend that the federal government delegated the power to exercise federal criminal jurisdiction to the Tribe by establishing the Choctaw Court of Indian Offenses, which functions as an instrumentality of the federal government.  Id. at 10-11.

"It is undisputed that Indian tribes have power to enforce their criminal laws against tribe members."  United States v. Wheeler, 435 U.S. 313, 322 (1978); accord Montana v. United States, 450 U.S. 544, 563 (1981).  The Supreme Court has squarely rejected the argument that this power derives from a delegation by the federal government, holding instead that the power is inherent in tribal sovereignty.  Wheeler, 435 U.S. at 322-23; see also 25 U.S.C. § 1301(2) (defining "powers of self-government" to include "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians").  Indian tribes continue to possess all aspects of sovereignty not withdrawn by treaty or statute, or "by implication as a necessary result of their dependent status."  Wheeler, 435 U.S. at 323.

Plaintiffs do not argue that the inherent criminal jurisdiction of the Choctaw Nation was withdrawn by treaty or statute.  Nor do they -- or could they -- contend that such jurisdiction is inconsistent with the Tribe's "dependent

status."  See id. at 326 ("[T]he sovereign power of a tribe to prosecute its members for tribal offenses clearly does not fall within that part of sovereignty which the Indians implicitly lost by virtue of their dependent status.").  Instead, Plaintiffs argue that the Choctaw Nation waived its jurisdiction in 1983 when it adopted a constitution that did not explicitly declare the Tribe's power to make and enforce criminal laws.  Aplt. Br. at 9-10.

The question of whether an Indian tribe may waive a sovereign power by failing to enumerate it in a tribal constitution is a legal question, which we review de novo.  Cf., e.g., Fletcher, 116 F.3d at 1323-24 ("We review de novo the legal question of when a party can assert sovereign immunity.").  The Supreme Court has held that a tribal constitution's silence regarding a particular sovereign power does not constitute a waiver of that power.  See Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 148 & n.14 (1982) (rejecting "silence as waiver" argument in context of sovereign power to tax).  To explain its holding, the Court noted that "neither the Tribe's Constitution nor the Federal Constitution is the font of any sovereign power of the Indian tribes.  Because the Tribe retains all inherent attributes of sovereignty that have not been divested by the Federal Government, the proper inference from silence on this point is that the [unenumerated] sovereign power . . . remains intact."  Id. at 148 n.14 (citations omitted).

The Supreme Court's holding in Merrion is controlling in this case.  The

Choctaw Nation's failure to explicitly describe the Nation's inherent criminal jurisdiction in its constitution did not (and, per Merrion, could not) effect a waiver of that power. Therefore, there is "no set of facts" that could have been alleged in support of this claim that would entitle the plaintiffs to relief, and dismissal for failure to state a claim and for lack of jurisdiction was proper. Seamons, 84 F.3d at 1231. In light of our holding that the Choctaw Nation has inherent criminal jurisdiction over its members and that such jurisdiction has been neither waived by the Tribe nor abrogated by Congress, we need not reach Plaintiffs' argument that the Choctaw Court of Indian Offenses, established pursuant to a Choctaw/BIA contract under the Indian Law Enforcement Act ("ILEA"), is a federal instrumentality exercising federal jurisdiction. In sum, we hold as a matter of law that at all times relevant to this action, the tribal defendants acted as agents of the Tribe pursuant to their inherent sovereign power to exercise criminal jurisdiction over intratribal offenses. Accordingly, we reject Plaintiffs' first and second contentions on appeal.

## C. **Individual Capacity Claims**

The district court's dismissal of the individual capacity Bivens claims against the tribal defendants was also proper, as was the dismissal of the FTCA claims against tribal security officers Kenneth Johnson and Blake Johnico in their

individual capacities. [1]  Under Bivens, an individual has a cause of action against a federal official in his individual capacity for damages arising out of the official's violation of the United States Constitution under color of federal law or authority. See Applewhite v. United States Air Force, 995 F.2d 997, 999 n.8 (10th Cir. 1993).  Similarly, the FTCA allows injured persons to sue for torts committed by federal employees while acting within the scope of their office or employment.  28 U.S.C. § 1346(b)(1).  Although the plaintiffs have alleged that the tribal defendants acted as federal agents, our standard of review does not require that we accept "conclusory allegations, unwarranted inferences, or legal conclusions" in a complaint.  Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994).  As explained, the tribal defendants did not act as federal employees or agents, nor did they act under color of federal law.  In addition, the tribal defendants are not bound by the United States Constitution.  Talton v. Mayes, 163 U.S. 376, 382-85 (1896) (holding that the U.S. Constitution only restricts the federal and state governments, but not tribal governments); Wheeler v. Swimmer, 835 F.2d 259, 262 (10th Cir. 1987) ("[T]he safeguards of the federal Constitution were not extended wholesale to individual members of Indian tribes.").  Therefore, Plaintiffs' constitutional and FTCA claims against the tribal

_____

[1] The United States did not substitute itself for tribal security officers Johnson and Johnico.  Fed. Aplee. Supp. App. at 5.

defendants in their individual capacities were properly dismissed for failure to state a claim.

## II.    Claims Against the Federal Defendants

Plaintiffs' original claims against the federal defendants invoked the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; § 1983; and an 1855 Treaty between the United States, the Choctaw Nation, and the Chickasaw Nation. [2]  In addition, the United States has been substituted as a party defendant to the plaintiffs' FTCA claims.

Regardless of the validity of the other claims against the federal defendants, the plaintiffs' reliance on the Fourteenth Amendment and on § 1983 is misplaced.   E.g., 1 Aplt. App. 100, ¶ 70 (invoking § 1983 as creating a cause of action against the federal government);     id. at 114, ¶ 117 (invoking Fourteenth Amendment as binding the federal government).  Both provisions are applicable only to actions by state and local entities, not by the federal government.        U.S. Const. amend. XIV ("No    State  shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any        State deprive any person of life, liberty, or property, without due process of law; nor

---

[2] The Amended Complaint also relies upon Treaties executed in 1830 and 1866, but Plaintiffs have only briefed the 1855 Treaty, thereby abandoning their appeals regarding the other two treaties. Coleman, 108 F.3d at 1205.  We therefore confine our analysis to the 1855 Treaty.

- 14 -

deny to any person within its jurisdiction the equal protection of the laws.")
(emphasis added); Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997)
(holding that the plaintiff's "claim under 42 U.S.C. § 1983 fails as a matter of law
because this section applies to actions by state and local entities, not to the
federal government").

A.    **Constitutional Claims**

Plaintiffs' constitutional claims against the federal defendants, which we
construe as Bivens claims, are premised on their legal conclusion that the tribal
defendants "were acting as federal law enforcement officers pursuant to the
authority granted them by the Bureau of Indian Affairs, under the Indian Law
Enforcement Act, 25 U.S.C.A. [§] 2801, et seq., under the direction and control of
[the federal defendants]." 1 Aplt. App. 98, ¶ 66 (Dry); see also id. at 112, ¶ 113
(McConnell); id. at 121-22, ¶ 143 (Burlison). We have already held that the tribal
defendants were not acting as federal officers or otherwise under color of federal
law. At all times material to this action, the tribal defendants acted pursuant to
their inherent criminal jurisdiction. Contrary to Plaintiffs' third contention,
neither the United States nor any other federal agency or officer is liable for the
acts of the tribal defendants. The constitutional claims against the federal

defendants are baseless and their dismissal was proper. [3]

### B. Treaty Claim

Plaintiffs' fourth contention is that individual "Choctaw citizens may seek compensation for injury pursuant to a treaty in federal district court." Aplt. Br. at 7. In pertinent part, the 1855 Treaty between the United States, the Choctaw Nation, and the Chickasaw Nation provides:

> The United States shall protect the Choctaws and Chickasaws from domestic strife, from hostile invasion, and from aggression by other Indians and white persons not subject to their jurisdiction and laws; and for all injuries, resulting from such invasion or aggression, full indemnity is hereby guaranteed to the party or parties injured, out of the treasury of the United States, upon the same principle and according to the same rules upon which white persons are entitled to indemnity for injuries or aggression upon them, committed by Indians.

Treaty with the Choctaws and Chickasaws, June 22, 1855, art. 14, 11 Stat. 611, 614 (emphasis added). Plaintiffs argue that they are entitled to indemnification under this Article because they suffered "injuries, resulting from . . . aggression" by BIA personnel, who are "not subject to the jurisdiction or laws of the Choctaw Nation." Aplt. Br. at 12.

It is well-settled that "[t]he very great majority of Indian treaties create tribal, not individual, rights . . . ." Hebah v. United States, 428 F.2d 1334, 1337

---

[3] All nine federal defendants were sued in their official capacities; BIA personnel Perry Proctor, Dennis Springwater, Karen Ketcher, and Larry Mings were also sued in their individual capacities. 1 Aplt. App. 87-88, 91, ¶¶ 7-15, 40.

(Ct. Cl. 1970) (citing <u>Blackfeather v. United States</u>, 190 U.S. 368, 377 (1903)). Even if we proceed under the dubious assumptions that the Treaty conferred individual rights and that jurisdiction was proper in the Eastern District of Oklahoma, the Treaty claim still fails because contrary to Plaintiffs' argument, none of the acts at issue in this case is attributable to BIA personnel. Nor are Plaintiffs entitled to indemnification under Article XIV for the actions of the tribal defendants, who are clearly "subject to [Choctaw] jurisdiction and laws." 11 Stat. at 614. Thus, on the facts before us, we reject Plaintiffs' fourth contention on appeal.

## C.    FTCA Claims

As indicated above, the United States was substituted as the real party in interest for the FTCA claims against all but two tribal defendants. The district court then dismissed the FTCA claims against the United States. 3 Aplt. App. 699. As originally pled, those claims accused tribal defendant Robert L. Rabon of engaging in malicious prosecution and abuse of process against all three plaintiffs. 1 Aplt. App. 101, ¶ 75 (Dry); <u>id.</u> at 116, ¶ 122 (McConnell); <u>id.</u> at 125, ¶ 152 (Burlison). The complaint also accused various tribal defendants of "assault and battery, unlawful detention, false imprisonment, and wrongful arrest." <u>Id.</u> at ¶ 74 (by Dry against substituted tribal defendants Hoppy Denison, Mike Russell, and Steven Flowers); <u>id.</u> at 116, ¶ 121 (by McConnell against

substituted tribal defendants Kim Reed, Bill Barrow, and Chris Welch); id. at 125, ¶ 151 (by Burlison against substituted tribal defendants Reed and Barrow).

Under the intentional torts exception to the FTCA, the general waiver of sovereign immunity effected by the Act only extends to suits for intentional torts such as "assault [and] battery, false imprisonment, false arrest, malicious prosecution, [and] abuse of process" if the conduct of "investigative or law enforcement officers of the United States Government" is involved. 28 U.S.C. § 2680(h). The applicability of the intentional tort exception is a question of subject matter jurisdiction, which we review de novo. Franklin v. United States, 992 F.2d 1492, 1495 (10th Cir. 1993).

Section 2680(h) lists only five of the six torts alleged in Plaintiffs' complaint. Although "false imprisonment" is listed in the statute, Plaintiffs' sixth claim -- "unlawful detention" -- is not. The definition of a term used in the FTCA "is by definition a federal question." Molzof v. United States, 502 U.S. 301, 305 (1992). To determine whether "false imprisonment" is synonymous with or includes "unlawful detention," we assume that "Congress proceeded from an understanding of established tort definitions . . . and consequently [we] look to the 'traditional and commonly understood legal definition of the tort' arguably excluded by § 2680(h)." Franklin, 992 F.2d 1495-96 (citation omitted). The cases suggest that "unlawful detention" is an element of -- or simply another

- 18 -

name for -- "false imprisonment." E.g., Hart v. Miller, 609 N.W.2d 138, 148 (S.D. 2000); Magwood v. Giddings, 672 A.2d 1083, 1086 (D.C. 1996); Big B, Inc. v. Cottingham, 634 So.2d 999, 1001 (Ala. 1993); O'Fallon v. Pollard, 427 N.W.2d 809, 811 (N.D. 1988); Towse v. State, 647 P.2d 696, 704 (Haw. 1982). Plaintiffs have not identified, nor have we found, any authority for the proposition that "unlawful detention" is a separate cause of action. We hold that Plaintiffs' unlawful detention claim does not allege a cause of action distinct from false imprisonment, and that all of the FTCA claims against the United States are therefore covered by § 2680(h).

We have already held that the tribal defendants were not acting as federal officers or otherwise under color of federal law for purposes of Plaintiffs' Bivens claims against the federal defendants or the FTCA claims against tribal defendants Johnson and Johnico. We now examine whether the tribal defendants originally named in the substituted FTCA claims are federal "investigative or law enforcement officers," as that term is specifically defined in § 2680(h). An "investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Although the complaint alleges that the tribal defendants "were acting as federal law enforcement officers pursuant to the authority granted them by the Bureau of

- 19 -

Indian Affairs, under the Indian Law Enforcement Act, 25 U.S.C.A. [§] 2801, et seq., under the direction and control of [the federal defendants]," e.g., 1 Aplt. App. 98, ¶ 66, this is a legal conclusion to which we need not defer. Hackford , 14 F.3d at 1465.

Plaintiffs have not cited any specific provision of the Indian Law Enforcement Act ("ILEA") in connection with their FTCA arguments, but we assume (as have the federal defendants), that they are relying on the following language:

> While acting under authority granted by the Secretary [of the Interior] . . . , a person who is not otherwise a Federal employee shall be considered to be (1) an employee of the Department of the Interior only for purposes of (A) the provisions of law described in section 3374(c)(2) of Title 5 . . . .

25 U.S.C. § 2804(f) (emphasis added). In pertinent part, 5 U.S.C. § 3374(c)(2) provides that "[d]uring the period of assignment, a State or local government employee on detail to a Federal agency . . . (2) is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act and any other Federal tort liability statute . . . ." Yet § 2804(f) does not support Plaintiff's theory because it provides that a tribal officer is only considered to be a federal employee for FTCA purposes "[w]hile acting under authority granted by the Secretary [of the Interior]." As explained above, the accused tribal officers in this case were acting under authority inherent in the Choctaw Nation's

sovereignty.  Cf. 25 U.S.C. § 2806(d) ("The provisions of [the ILEA] alter neither the civil or criminal jurisdiction of the United States, Indian tribes, . . . nor the law enforcement, investigative, or judicial authority of any Indian tribe, . . . or political subdivision or agency thereof . . . ."). The intentional tort exception therefore applies and the United States is immune from Plaintiffs' FTCA claims. We have already rejected Plaintiffs' third contention with respect to their  Bivens claims; we now reject it in the FTCA context as well.

## III.    Claims Against the City Defendants

Plaintiffs' fifth contention on appeal relates to the city defendants' liability under § 1983. [4]  Because the § 1983 claims are before us on appeal from the district court's summary judgment orders, Aplt. Br. at Tabs 10 & 11, our review is de novo .  Stamper v. Total Petroleum, Inc. Retirement Plan for Hourly Rated Employees , 188 F.3d 1233, 1237 (10th Cir. 1999).  We examine the facts in the light most favorable to the plaintiffs, and we affirm the district court's order only if the record demonstrates that there is no genuine issue as to any material fact and that appellees are entitled to judgment as a matter of law.  Id.; see also  Fed. R. Civ. P. 56(c).

---

[4] Although the complaint also asserted pendent state claims against the city defendants under the Oklahoma Governmental Tort Claims Act, those claims are not mentioned in Plaintiffs' brief.  We therefore deem them to have been abandoned on appeal.  Coleman, 108 F.3d at 1205.

Plaintiffs do not contest any of the facts material to their § 1983 claims.

Aplt. Br. at 13. Upon our de novo review of the record, including the pleadings,

the plaintiffs' answers to interrogatories, and the city defendants' affidavits, see

Fed. R. Civ. P. 56(c), we agree with the district court's conclusion that there are

no genuine issues as to any material fact. Summ. J. Order at 6 (Aug. 16, 1999),

Aplt. Br. at Tab 10; Summ. J. Order at 5 (Aug. 16, 1999), Aplt. Br. at Tab 11.

The City of Clayton and the City of Talihina are both parties to cross-deputization

agreements with the Choctaw Nation and the BIA. Those agreements provide for

the use of each city's jail to detain prisoners of the Tribe or the BIA. When

Plaintiffs were brought to the Talihina and Clayton jails, the tribal officers

informed the respective jailers, both of whom also serve as Chief of Police, of the

charges against them. Talihina Aplee. Supp. App. at 12 (Dry's Resp. to

Interrog.); Clayton Aplee. Supp. App. at 14 (Burlison's Resp. to Interrog.); Id. at

28 (McConnell's Resp. to Interrog.). When tribal officers informed Defendant

Jack England, the Talihina jailer and police chief, that the charge against Plaintiff

Dry was resisting arrest, England made multiple attempts to determine the

circumstances surrounding the original arrest. Talihina Aplee. Supp. App. at 12

(Dry's Resp. to Interrog.); id. at 24 (England Aff.). Plaintiffs were detained for

approximately two to three hours, then returned to Tuskahoma, Oklahoma, for

charging.  Id.; Clayton Aplee. Supp. App. at 18-19 (Burlison's Resp. to Interrog.); Id. at 28-29 (McConnell's Resp. to Interrog.).

In essence, Plaintiffs claim that before a jailer can accept a detainee into custody, he is constitutionally obligated to (1) question the arresting officers as to their probable cause for arrest, (2) verify the validity of the grounds for detention under the charging entity's laws, and (3) conduct an independent constitutional and historical analysis to determine whether the charging entity's assertion of jurisdiction over the detainee is legitimate.  We agree with the district court that absent any objectively apparent "lack of a basis for a detention which should arouse suspicion, a jailer cannot be expected to assume the mantle of a magistrate to determine the probable cause for an arrest."  Summ. J. Order at 7, Aplt. Br. at Tab 10;  cf. Martinez v. City of Los Angeles, 141 F.3d 1373, 1380 (9th Cir. 1998); Wood v. Worachek, 618 F.2d 1225, 1231 (7th Cir. 1980).  The uncontroverted facts demonstrate that neither jailer violated any of the plaintiffs' constitutional rights by detaining them for a few hours in accordance with the cross-deputization agreements.

In addition to the jailers, Plaintiffs have also named the cities and several city officials as defendants, presumably under municipal and supervisory liability theories.  In the absence of an underlying constitutional violation, there can be no derivative liability.  City of Los Angeles v. Heller, 475 U.S. 796, 798-99 (1986);

<u>Thompson v. City of Lawrence, Kan.</u>, 58 F.3d 1511, 1517 (10th Cir. 1995). We therefore affirm the district court's award of summary judgment for the city defendants as to all of the § 1983 claims, and we reject Plaintiffs' fifth and final contention on appeal.

The district court's judgment dismissing all claims against the tribal, federal, and city defendants are AFFIRMED.