United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 26, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No.  05-30223
Summary Calendar

NORRIS P.  HEBERT, SR.,

Plaintiff,

JOHN C. WIRICK, IV; ET AL.,

Defendants,

JOHN C.  WIRICK, IV; RONALD VIDALLIA,

Defendants-Third Party Plaintiff-Appellants,

INDIAN NATIONS INSURANCE COMPANY,

Intervenor Defendant-Appellant,

versus

UNITED STATES OF AMERICA,

Third Party Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before BARKSDALE, STEWART and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

John C. Wirick, IV, Ronald Vidallia and Indian Nations Insurance Company ("Wirick et al.")

seek reimbursement from the United States for a settlement they paid in an underlying civil rights

claim. They appeal the judgment, and dismissal with prejudice, in favor of the United States in this 42 U.S.C. § 1983 action. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2001, Chitimacha Tribal Police Officer John C. Wirick, IV ("Wirick") responded to a domestic dispute between two non-Indians in a parking lot adjacent to the Cypress Bayou Casino ("Casino"), located on tribal land surrounded by St. Mary Parish, Louisiana. Norris Hebert ("Hebert"), the original plaintiff in this suit, was a witness to the incident in the parking lot. Wirick began questioning the persons involved in the dispute, and Hebert became impatient and wanted to leave. Wirick initially asked Hebert to remain at the scene so Wirick could obtain a statement, but later, Wirick asked Hebert to leave the premises. Because Hebert had been drinking, however, Wirick stated that Hebert's girlfriend would need to drive him. At this point, Hebert ignored Wirick and sought to reenter the Casino. Wirick attempted to stop him and, in doing so, Hebert was knocked to the ground and injured, but not seriously, as he later refused medical treatment at a nearby hospital. Accordingly, Hebert was charged with resisting an officer, simple battery and remaining where forbidden.

On September 6, 2002, Hebert filed a suit against Wirick, the Chitimacha Tribal Police, Casino employee Virginia Desormeaux, Tribal Police Chief Ronald Vidallia ("Vidallia"), and the Casino in district court alleging a violation of his civil rights. At the time of the incident, Wirick was authorized to act under the Bureau of Indian Affairs ("BIA") Special Law Enforcement Commission ("SLEC") and the St. Mary Parish Sheriff's Deputy Commission. According to Wirick et al., because of the overlapping federal, state and tribal jurisdictions on Indian reservations, Wirick was permitted to enforce the law under all three jurisdictions. Pursuant to the Indian Self-Determination and

2

Education Assistance Act, 25 U.S.C. § 450 (2005), tribes can contract with the BIA to perform law enforcement services. Additionally, under the Indian Law Enforcement Reform Act, 25 U.S.C. § 2803 (2005), the BIA can commission an SLEC to assist the BIA in providing law enforcement services. Accordingly, prior to the altercation underlying this appeal, the BIA signed a Deputation Agreement with the Chitimacha Police Department in which the BIA agreed to and did issue an SLEC to Wirick, cross deputizing him as a BIA law enforcement officer.

Testimony of David Nicholas ("Nicholas"), BIA Special Agent in Charge for the District 6 Office, however, revealed that Wirick was not employed by the BIA as a Special Agent. He explained that Wirick was an SLEC under a Deputation Agreement and thereby, the BIA had no direct supervision of him. Furthermore, Nicholas testified that tribal officers with SLECs had the same authority as BIA officers and therefore an SLEC does not grant tribal officers the authority to enforce state law. On the other hand, Wirick's supervisor, Vidallia, testified that Wirick had the authority to arrest non-Indians for state law violations and that Wirick was under the direct control of the Chitimacha Police Department.

After Hebert filed the lawsuit, Wirick and Vidallia contacted the local United States Attorney, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C §§ 2674, 1346 (2005), requesting representation in preparation for their defense. The United States, however, refused to certify the parties' scope of employment as federal in nature and therefore did not agree to provide legal counsel. As a result, Wirick and Vidallia reached a settlement in the amount of $25,000 with Hebert.

On January 2, 2003, after the settlement agreement was made, Wirick and Vidallia answered the original complaint made by Hebert and filed a third party complaint naming the United States as the third party defendant pursuant to the FTCA. Wirick and Vidallia asserted that the United States

3

should be substituted as a defendant because they were acting within the course and scope of their employment as law enforcement officers of the BIA. Specifically, Wirick and Vidallia sought reimbursement for the settlement amount paid to Hebert. Therefore, the district court dismissed Hebert's claims against Wirick and Vidallia and joined the United States as a third party defendant.

Accordingly, the United States filed a motion to dismiss for lack of subject matter jurisdiction on July 16, 2003, stating that the United States had not waived sovereign immunity to be sued for indemnification under the FTCA. The district court denied this motion and a subsequent motion by the United States for summary judgment. Thereafter, the United States filed a second motion to dismiss for lack of subject matter jurisdiction for failure to exhaust administrative remedies. The district court granted this motion, but only concerning the § 1983 claims; the motion to dismiss was denied as to the negligence and battery claims. Furthermore, prior to trial, the district court also dismissed Hebert's claims for attorneys' fees. To complicate matters further, Indian Nations Insurance Company ("Indian Nations"), the insurer of Wirick and Vidallia, then intervened in the lawsuit, claiming a right of subrogation for funding the settlement payment to Hebert.

Wirick et al. consented to trial before a magistrate judge on January 4, 2005. The court concluded that Wirick was not covered under the FTCA because he was not enforcing federal law, denied the claims of Wirick et al. and dismissed the case with prejudice. Thereafter, on February 22, 2005, Wirick et al. filed a timely notice of appeal asserting that the magistrate judge erred in dismissing the underlying civil rights claim because Wirick was acting within the scope of his employment and thus should have been provided coverage by the FTCA.

## II. DISCUSSION

A. Standard of Review

4

Under the FTCA, 28 U.S.C. § 1346(b) (2005), if an act was not committed by an employee of the United States, then the district court must dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). Accordingly, this case was dismissed by the district court. Therefore, "[w]e apply a de novo standard of review to the question of whether an individual is an employee of the government for purposes of the FTCA." *Id.* (citations omitted); *Musslewhite v. State Bar of Tex.*, 32 F.3d 942, 945 (5th Cir. 1994) (holding that a district court's dismissal for lack of subject matter jurisdiction warrants de novo review).

B. Scope of Employment

First we note that the magistrate judge did not determine what law Wirick et al. were acting pursuant to in this case, though their brief erroneously quotes the lower court as determining that "Wirick was acting under the Tribe's inherent sovereignty." Instead, the magistrate judge correctly determined what law Wirick et al. were *not* acting under. For the reasons stated below in excerpts from the magistrate judge's Findings of Facts and Conclusions of Law, as well as our own independent analysis, we find that the FTCA precludes the present action for reimbursement against the government.

The FTCA imposes liability upon the United States for the tortious conduct of its employees, when acting within the course and scope of their employment, in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. §§ 2674, 1346. The United States represents defendants sued in their individual capacities when they have acted within the scope of their federal employment and it is in the interests of the United States to afford representation. 28 C.F.R. § 50.15 (2005). When Congress enacted the FTCA, it waived the government's immunity

from liability for certain torts, in particular for the negligent acts of government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). There is, however, an exception to that limited waiver of immunity, under which the United States retained its immunity from suit for certain enumerated intentional torts, including "[a]ny claim arising out of assault, battery, [or] false imprisonment." 28 U.S.C. § 2680(h) (2005).

Furthermore, this exception excludes assault and battery and similar claims allegedly committed by "investigative or law enforcement officers of the United States government." *Id*. "Investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Therefore, because the case before us involves an assault and battery claim, we must determine if this "investigative or law enforcement officer" exception applies. In other words, the question is whether Hebert's arrest was made pursuant to federal law, triggering FTCA protection. Finding no applicable Fifth Circuit case law, the magistrate judge relied on *Dry v. United States*, 235 F.3d 1249 (10th Cir. 2000).

In *Dry*, Choctaw Nation Tribal officers arrested Native Americans on Choctaw land and charged them with numerous offenses in tribal court. *Id.* at 1251. The tribal members then filed suit against certain law enforcement personnel and asserted constitutional violations in concert with FTCA claims. *Id.* The district court found the FTCA inapplicable and dismissed all claims against the tribal defendants. *Id.* at 1255. On appeal, the Tenth Circuit determined that the tribal defendants were not acting as "federal investigative or law enforcement officers" under 28 U.S.C. § 2680. *Id.* at 1257. Instead, the court concluded they were acting under the Tribe's inherent tribal sovereignty over its

6

own members and stated that "Indian tribes have power to enforce their criminal laws against tribe members." *Id.* at 1254.

We agree wit h Wirick et al. that there is an obvious difference between *Dry* and the case before us. In *Dry*, the parties were tribal members; in this case, the parties to the original domestic dispute and subsequent altercation involving Hebert are not tribal members. Therefore, Wirick et al. assert that Wirick and Vidallia could not have been acting pursuant to the Chitimacha Tribe's inherent authority. Even the United States Attorney who refused representation to Wirick and Vidallia initially argued that they were acting pursuant to state law because the Chitimacha Tribe does not possess criminal jurisdiction over non-Indians within its reservation. *See Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 195 (1978). Nonetheless, we do not find it necessary to squarely decide the state law versus tribal authority question in order to dispose of t he appeal before us. The magistrate judge correctly decided the salient issue presented to it, Wirick and Vidallia did not act within the scope of federal employment in order for FTCA coverage to attach to Hebert's claim. Neither Wirick nor Vidallia were employed as Bureau of Indian Affairs law enforcement officers or special agents, nor were they acting in accordance with any special commission to assist the Bureau of Indian Affairs with providing law enforcement services. In short, the record demonstrates that no enforcement of federal law occurred when Hebert was arrested.

The parties also rely on the six-page Deputation Agreement issued by the United States Bureau of Indian Affairs to bolster their respective arguments regarding Wirick and Vidailla's employment status. Wirick et al. refer to key language in the contract discussing "when law enforcement officers arrest a criminal suspect, the officers may not know if the suspect or the victim is an Indian . . . ." The government highlights that the contract also provides, "[t]he purpose" of the

7

Agreement, on its face, is "to provide commissioned officers the authority to enforce federal and tribal laws only." The main point of this contract, however, is that there is an agreement conferring powers inherent to tribal officers to a non-Native American officer from St. Mary Parish, Louisiana. It may be debatable whether Wirick was acting in accordance with state law or inherent tribal law when he responded to the domestic disturbance at the casino and later entered into an altercation with Hebert. Nonetheless, it is clear that Wirick was not enforcing federal law. Accordingly, this case does not trigger the "investigative or law enforcement officer" exception to the FTCA.

## C. Sovereign Immunity

In this appeal, both parties also address whether the United States has waived its sovereign immunity. The underlying basis of Hebert's federal court complaint against Wirick, Vidallia, the Chitimacha Tribal Police, Casino employee Virginia Desormeaux, and the Casino is an alleged violation of his Constitutional rights under color of state law.

"[T]he United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." *Smith v. Booth*, 823 F.2d 94, 96 (5th Cir. 1987). Sovereign immunity protects the United States from liability, and deprives the court of subject matter jurisdiction over the claims against it. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA is a waiver of sovereign immunity, allowing the Federal Government to be sued for the actions of any employee of the government while acting within the course and scope of his office or employment under circumstances where the United States would be liable if it were a private employer. 28 U.S.C. § 1346. Having determined that Wirick and Vidallia were not enforcing federal law and, thus, were not acting under powers provided by the federal government, we need not entertain the assertion that, "[e]ven if Hebert alleges [§] 1983 claims, the government must still step

8

in and defend if the federal employee is acting within the course of his employment." As we have stated, Wirick and Vidallia, for purposes of this appeal, are not federal employees who acted within the scope of their employment. Accordingly, we find that Wirick and Vidallia's conclusory assertions are insufficient to sustain their burden to show that sovereign immunity was waived by the government with regard to their § 1983 claim.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.