**Cesar Peraza BARRAZA and Ramona Irene Quijada–Soto, Statutory Death Beneficiaries of Juan Patricio Peraza, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 05–CA–0352–KC.

United States District Court, W.D. Texas, El Paso Division.

July 24, 2007.

Enrique Moreno, Law Offices of Enrique Moreno, Lynn Coyle, Francisco X. Dominguez, Dominguez & Coyle, P.L.L.C., El Paso, TX, for Plaintiffs.

Harold E. Brown, Jr., Assistant U.S. Attorney, San Antonio, R. Barry Robinson, Assistant U.S. Attorney, Austin, TX, for Defendant.

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant "United States of America's Motion for Summary Judgment" ("Motion"). As the record now stands, the Motion should be granted. However, the Court will reserve entry of the final judgment. The Court will provide Plaintiffs with an opportunity to submit competent summary judgment evidence, as detailed herein. So long as Plaintiffs produce such evidence by **August 20, 2007,** Defendant's Motion shall be denied. If Plaintiffs fail to produce such evidence, the Motion shall be granted.

## I. BACKGROUND

The following background is derived from the undisputed facts as found in the parties' pleadings in support of and opposition to summary judgment.

On the morning of February 23, 2003, Border Patrol Agents ("BPAs") Carlos Dominguez ("Dominguez") and Joel Graciano ("Graciano") were on patrol in downtown El Paso. Def.'s Mot. for Summ. J. ¶ 23. The two BPAs drove to the Annunciation House. *Id.* ¶ 24. Outside the Annunciation House, the two BPAs spoke to Juan Patricio Peraza ("Peraza"). *Id.* ¶ 25. At the time, Peraza was illegally in the United States and was living at the Annunciation House. *Id.* ¶ 18. Peraza ran from the BPAs, down San Antonio Street. *Id.* ¶ 29.[1] Dominguez chased Peraza down

---

1. The parties dispute whether Peraza ran from BPAs during a *Terry* stop, or if Peraza was under arrest and escaped. For purposes of summary judgment, the distinction is not important and the Court will adopt the non-moving party's contention that Peraza was not under arrest and ran from the BPAs.

San Antonio Street, down an alley, and on to Olive Street. *Id.* ¶ 31.

Dominguez then followed Peraza into the front yard at 916 Olive Street. *Id.* Dominguez drew his baton and ordered Peraza to get on the ground. *Id.* ¶¶ 34–35. Peraza resisted, and Dominguez said he would hit Peraza with the baton if Peraza did not stop resisting. *Id.* ¶ 36. Peraza did not comply with Dominguez' order, and Dominguez struck Peraza with the baton. *Id.* ¶ 38. Peraza got away from Dominguez and ran to the backyard of the house. *Id.* Dominguez called his partner, Graciano, on the radio, and the two searched for Peraza, but did not find him. *Id.* ¶¶ 39, 41.

Dominguez continued to search for Peraza, while Graciano requested backup. *Id.* ¶¶ 42–43. Dominguez found Peraza in the backyard of 1113 San Antonio. *Id.* ¶ 46. Dominguez again confronted Peraza, and Dominguez ordered Peraza to lie on the ground. *Id.* ¶ 48. Peraza did not comply. *Id.* Peraza picked up a pipe and Defendant alleges he advanced on Dominguez. *Id.* ¶ 49. Plaintiffs neither admit nor deny that Peraza advanced on Dominguez, but both parties agree Peraza picked up a pipe at some point. Pls.' Resp. to Def. Mot. for Summ. J. ¶¶ 49, 67.

BPAs Jose Garcia ("Garcia"), David Tope ("Tope"), Albert Ramirez ("Ramirez"), and Graciano saw Dominguez retreating down San Antonio Street. *Id.* ¶¶ 64–65. Graciano ran up the street, and Tope, Ramirez, and Garcia got into their vehicles and drove toward the confrontation. *Id.* ¶ 65. Ramirez attempted to block Peraza and Peraza advanced on Ramirez' vehicle. *Id.* ¶¶ 66–67. Ramirez drew his weapon, exited his vehicle, then walked to the front of the vehicle with his weapon pointed at Peraza. *Id.* ¶¶ 67–68. The other agents stood behind Ramirez to his right and left and drew their weapons. *Id.* ¶ 72. Ramirez began talking to Peraza in both English and Spanish, attempting to

get Peraza to put the pipe down. *Id.* ¶¶ 74, 76–77. Peraza began to put the pipe down and took two steps away from the BPAs. *Id.* ¶ 77. Vernon Neal Billings ("Billings") arrived at the scene after the other agents had engaged Peraza and ordered Peraza to drop the pipe. Def.'s Mot. for Summ. J. ¶ 90.

At this point, the facts are greatly disputed by the parties. Defendant alleges that Billings drew his weapon and aimed it at the street. *Id.* ¶ 93. Peraza then turned his attention towards Billings and charged at Billings. *Id.* ¶ 95; Exs. E, F, H. Peraza had the pipe over his shoulder as he charged Billings. *Id.* ¶ 97. Billings then raised his weapon and again ordered Peraza to "Stop; Drop the pipe." *Id.* ¶ 98. Peraza kept charging, and Billings fired two shots into Peraza's torso. *Id.* ¶ 99.

Plaintiffs allege that Peraza never charged or ran towards Billings. Pls.' Resp. to Def.'s Mot. for Summ. J. ¶ 21, Exs. I–L. Rather, Peraza was turning away, or backing away from the BPAs when he was shot. Pls.' Resp. to Def.'s Mot. for Summ. J. ¶ 22, Exs. I–L. Additionally, Plaintiffs allege that Peraza was at least twenty feet away from any BPA when Peraza was shot. *Id.* Both parties agree that Billings' shooting of Peraza led to Peraza's death. Def.'s Mot. for Summ. J. ¶ 100.

On September 15, 2005, Plaintiffs filed the instant Complaint. On February 27, 2007, Defendant filed its Motion for Summary Judgment currently under consideration.

## II. DISCUSSION

### A. Standard

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Competency of Evidence

■ Defendant alleges that Plaintiff's Exhibits I, J, K, and L are not competent summary judgment evidence as they do not qualify as affidavits. Def.'s Reply to Pls.' Resp. to Mot. for Summ J. 5. Specifically, Defendant challenges these exhibits as they are not sworn under penalty of perjury. *Id.* at 5–6. Defendant alleges

that each exhibit is missing a signature of the individual who administered the oath. *Id.* at 6. Additionally, Defendant alleges that Exhibits M and N are unsigned by the officers who allegedly made the statements.

■ Affidavits shall set forth such facts as would be admissible in evidence. FED.R.CIV.P. 56(e). Sworn or certified copies of all papers shall be attached or served therewith. *Id.* An unsworn statement is incompetent to raise a fact issue for summary judgment. *Okoye v. Univ. of Tex. Health Sci. Ctr.,* 245 F.3d 507, 515 (5th Cir.2001); *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988). It is essential that statements be under penalty of perjury in order to ensure that affiants cannot circumvent the penalties for perjury in signing onto intentional falsehoods. *Kline,* 845 F.2d at 1306. "A statutory exception to this rule exists under 28 U.S.C. § 1746 (' § 1746'), which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.' " *Kline,* 845 F.2d at 1306 n. 12. When there are grave charges, the courts should not construe the Federal Rules as compelling courts to summarily dismiss without argument or answer. *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). The purpose of the Federal Rules of Civil Procedure is to administer justice through fair trials. *Id.* The rules were designed to get away from procedural traps, and should permit bona fide complaints to be carried out to adjudication on the merits. *Id.*

In the instant case, Plaintiffs have submitted witness statements, contained in Exhibits I–K, which are not signed by the individual who issued the oath. Exhibit L appears to be signed by the individual making the statement in the section re-

served for the individual who issues the oath. As such, Exhibit L will be evaluated by the Court in the same manner as Exhibits I–K. Without the signature of the person issuing the oath, there is no way for the Court to ensure that these statements were made under oath and that the witnesses were properly sworn. Because these statements are not properly documented as sworn, they cannot comprise competent summary judgment evidence.

■ Additionally, although the statements presented in Exhibits I–L all contain the phrase "I find it to be true and correct to the best of my knowledge" this does not meet the requirements for a statutory exception under § 1746. Section 1746 requires that the statement be verified as "true and correct" as well as "under penalty of perjury." The requirement that the statement be made under penalty of perjury is essential to ensure that witnesses are aware of the consequences of making false statements. Because these statements cannot demonstrate that the affiants were aware of the possible consequences of making false statements, these statements do not meet the requirements for competent summary judgment evidence and they will not be considered by the Court.

■ The Court also has concerns with the admissibility of these statements due to the involvement of an interpreter. The Court must determine if the use of an interpreter creates an additional level of hearsay or if the interpreter is merely a language conduit. *Cruz v. Aramark Servs., Inc.*, 213 Fed.Appx. 329, 333 & n. 9 (5th Cir.2007) (unpublished).

> In determining whether to treat a translator as a mere conduit, the [Fifth Circuit] look[s] to: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; (4) whether

actions taken subsequent to the conversation were consistent with the statements as translated.

*United States v. Martinez–Gaytan*, 213 F.3d 890, 892 (5th Cir.2000).

The challenged evidentiary statements were translated by officers of the El Paso Police Department. While the first two factors of the test set out above in *Martinez–Gaytan* may weigh in favor of admissibility, Plaintiffs have not provided Court with any information as to the police officers' skills or qualifications as interpreters. As such, the Court is uncertain whether these statements were accurately translated, whether hearsay has been created, and thus, whether the translations comprise competent summary judgment evidence.

Turning to Exhibits M and N, these exhibits are lacking signatures by the individuals making the statements, and are challenged by Defendant as unsigned and thereby not sworn. These exhibits merely chronicle the efforts of El Paso Police officers after the shooting occurred, and do not establish any disputed material facts. As the Court can find no information in the documents that would impact summary judgment, the Court need not make a determination on the admissibility of these exhibits.

■ With the exclusion of Plaintiffs' Exhibits I–L there would not be a material issue of fact left before the Court. However, because Defendant has raised the issue of competency for the first time in its Reply to Plaintiffs' Response to Motion for Summary Judgment, Plaintiffs have not had an opportunity to correct their evidence or respond to Defendant's challenges and this Court's concerns. Because the charges in Plaintiffs' Complaint are significantly grave, the Court must utilize its discretion to ensure that justice is administered. To this end, the Court will

allow Plaintiffs the opportunity to correct their summary judgment evidence.

## C. Federal Tort Claims Act

 Assuming the submission of admissible evidence, for the reasons set forth below, Plaintiffs' claim survives summary judgment. Plaintiffs have brought their claim under 28 U.S.C. § 1346(b) ("FTCA") which provides that the United States district courts shall have exclusive jurisdiction of civil actions on claims against the United States for injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b). The FTCA effectively waives governmental immunity for negligent acts committed by government employees while acting within the scope of their employment. *Id.; Dolan v. U.S. Postal Serv.,* 546 U.S. 481, 126 S.Ct. 1252, 1256, 163 L.Ed.2d 1079 (2006); *Hebert v. United States,* 438 F.3d 483, 486 (5th Cir.2006). When the United States is liable for negligence committed by federal employees, the United States shall be liable in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. § 1346(b)(1); *Dolan,* 126 S.Ct. at 1256; *Hebert,* 438 F.3d at 486. When law enforcement functions are involved, the inquiry into governmental liability must include an examination of the liability of state entities under like circumstances. *Crider v. United States,* 885 F.2d 294, 296 (5th Cir.1989) (evaluating a federal law enforcement agent under duties of state law enforcement agent and as a private individual). The applicable law is the law of the state where the act or omission occurred. 28 U.S.C. § 1346(b)(1); *Quijano v. United States,* 325 F.3d 564, 567 (5th Cir.2003).

The parties agree that Billings' discharging his firearm and shooting Peraza occurred while Billings was a federal employee acting within the scope of his employment. The issue in the instant case is the justification of the shooting. To determine the justification of the shooting, the Court must apply Texas law, as all events occurred within the State of Texas.

## D. Wrongful Death under Texas Law

Defendant argues that Billings' shooting Peraza was justified, as Billings was authorized to use force to effect an arrest of Peraza, and Peraza was attempting to use deadly force against Billings. Def.'s Mot. for Summ. J. 8. Defendant argues that it is entitled to invoke the privilege to use deadly force available to state law enforcement officers, and that it is entitled to invoke self defense privileges applicable to private citizens. *Id.* at 6.

Plaintiffs respond by arguing that there are disputed issues of fact, and these issues determine the reasonableness of Billings' actions. Pls.' Resp. to Def.'s Mot. for Summ. J. 6. Plaintiffs further argue that, under their version of the facts, Peraza never charged at Billings, and as such, Billings' shooting Peraza was negligent and unreasonable. *Id.* at 6. Finally, Plaintiffs argue that Defendant's justification defenses do not apply in a civil proceeding. *Id.* at 9–10.

 In Texas, section 71.002 of the Civil Practices and Remedies Code provides for liability in tort when a death is caused by the person's wrongful act, neglect, carelessness, unskillfulness, or default. TEX. CIV. PRAC. & REM.CODE ANN. § 71.002(b) (Vernon 2007). A cause of action for negligence in Texas consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex.2002).

While the Civil Practice and Remedies Code provides for liability in tort, Defen-

dant contends that it is entitled to invoke State law justification defenses of self defense and defense of others. Def.'s Reply to Pls.' Resp. to Mot. for Summ. J. 3. Specifically, Defendant seeks to justify Billings' shooting of Peraza by utilizing the Texas Penal Code which provides in relevant part that a peace officer is authorized to utilize deadly force against another when the peace officer reasonably believes the deadly force is immediately necessary to make an arrest, the peace officer reasonably believes the arrest is lawful, the actor has identified himself as a peace officer, and the actor reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the actor or another if the arrest is delayed. TEX. PENAL CODE ANN. § 9.51(a)-(c) (Vernon 2007). The Texas Penal Code also provides that a person is justified in using force when it is immediately necessary to protect himself against another's attempted use of unlawful force. *Id.* § 9.31. Deadly force is justified when force is authorized under section 9.31 and a reasonable person would not retreat, and he reasonably believes the deadly force is immediately necessary to protect himself against another's use or attempted use of deadly force. *Id.* § 9.32.

The parties do not dispute that a duty exists, or that the damages were proximately caused by the actions of Billings, but only whether there was a breach of the duty owed by Billings to Peraza. In order to evaluate if a breach exists, the Court will first turn to an examination of the facts as presented by Defendant to determine if Defendant could even meet its burden for summary judgment.

Defendant has submitted depositions from BPAs which establish a fact pattern in which Peraza charged at Billings with a five foot long pipe raised up and ready to strike at Billings. Despite being ordered to stop, Peraza continued to charge at Billings. Under this set of facts, it could be reasonable for Billings to be in fear of immediate harm from Peraza. With the threat of immediate harm, a fact finder could find that Billings was justified in discharging his weapon and that Billings' actions do not constitute negligence. Defendant's version of the facts, could negate the material elements of Plaintiffs' claim. However, Plaintiffs respond by submitting numerous witness statements which outline a much different sequence of events.

According to Plaintiffs' witnesses, Peraza was backing away from BPAs and did not threaten the BPAs with the pole when Billings was on the scene. Under this version of the facts, Billings would be unjustified in using deadly force against Peraza, as Peraza was either surrendering his weapon, or at least moving away from BPAs when he was shot. Even assuming that Defendant would be allowed to assert self defense as a justification, under this version of the facts, there would be no justification to use force as Billings and the other agents were under no immediate threat. Because Defendant's Motion to for Summary Judgment would fail even if allowed to utilize the justification defenses, the Court does not need to determine if these defenses apply at this time.

Assuming admissibility, Plaintiffs' witness statements establish that a genuine issue of material fact exists. Based on Plaintiffs' version of events, an award of summary judgment for Defendant would be inappropriate, as a factfinder could reasonably find in favor of Plaintiffs.

## III. CONCLUSION

As the record now stands, Defendant's Motion should be granted. However, for the reasons set forth above, if Plaintiffs were to present competent summary judgment evidence, the Motion would be denied. Accordingly, Plaintiffs are given un-

til *August 20, 2007,* to submit competent summary judgment evidence, as to the version of events as set forth in Exhibits I–L, such evidence could include sworn depositions translated by a qualified interpreter.

**SO ORDERED.**