FILED
United States Court of Appeals
Tenth Circuit

November 14, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALVIN VALENZUELA,

      Petitioner - Appellant,

v.

STEVE SILVERSMITH, Deputy
Warden, McKinley County Detention
Center; JOSEPH DELGADO, Corrections
Administrator, Tohono O'odham Nation,

      Respondents - Appellees.

No. 11-2212

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:10-CV-01127-MCA-GBW)**

---

Barbara Louise Creel (Christine Zuni Cruz, with her on the briefs), University of New
Mexico Clinical Law Programs, Albuquerque, New Mexico, appearing for Appellant.

Laura Berglan, Assistant Attorney General (Doreen N. McPaul, Assistant Attorney,
General, with her on the brief), Tohono O'odham Nation, Office of the Attorney General,
Sells, Arizona, appearing for Appellee Delgado.

Desiree D. Gurule (Kevin N. Brown and Elizabeth V. Friedenstein, with her on the brief),
Brown Law Firm, Albuquerque, New Mexico, appearing for Appellee Silversmith.

---

Before **BRISCOE,** Chief Judge, **GORSUCH,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

Alvin Valenzuela, an enrolled member of the Tohono O'odham Nation (the "Nation"), through counsel, filed a petition for writ of habeas corpus pursuant to 25 U.S.C. § 1303 seeking relief from tribal court convictions and his sentence. While Mr. Valenzuela's petition was pending in federal district court, he completed his sentence and was released from prison. The district court concluded that Mr. Valenzuela's claims were moot because of his release. Alternatively, it concluded that Mr. Valenzuela had failed to exhaust his tribal remedies before seeking habeas relief in federal court. Based on these alternative grounds, the district court dismissed Mr. Valenzuela's § 1303 petition. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm on the ground that Mr. Valenzuela failed to exhaust his tribal court remedies and remand for the district court to dismiss his § 1303 petition without prejudice.

## I.    BACKGROUND

### A. *The Indian Civil Rights Act*

Federal courts have long recognized that Indian tribes possess a unique legal status. *See, e.g.*, *Cherokee Nation v. Georgia*, 30 U.S. 1, 16-17 (1831); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880 (2d Cir. 1996). "Indian tribes are distinct political entities retaining inherent powers to manage internal tribal matters." *Poodry*, 85 F.3d at 880. Constitutional provisions that limit federal or state authority do not apply to Indian tribes because the tribes retain powers of self-government that predate the Constitution. *See id.* at 880-81; *see also, e.g.*, *Talton v. Mayes*, 163 U.S. 376, 384 (1896) (holding that tribal courts are not subject to the Fifth Amendment's requirement of

2

indictment by grand jury); *Martinez v. S. Ute Tribe*, 249 F.2d 915, 919 (10th Cir. 1957) (explaining that the Due Process Clause of the Fifth Amendment does not apply to tribes); Felix S. Cohen, *Handbook of Federal Indian Law* § 4.01 (Supp. 2009) ("Indian tribes are not constrained by the provisions of the United States Constitution, which are framed specifically as limitations on state or federal authority.").

Because the individual rights provided in the Constitution do not protect Indians against their tribes, Congress passed statutes that limit tribes' authority over their members. In 1968, Congress passed the Indian Civil Rights Act ("ICRA") to provide enrolled tribal members with basic rights. *See* 25 U.S.C. § 1302. Several of the rights provided in § 1302 are similar to the guarantees afforded by the Constitution's Bill of Rights.

Three provisions of § 1302 are relevant to this appeal. First, "[n]o Indian tribe . . . shall . . . deny to any person in a criminal proceeding the right . . . [to have] at his own expense . . . the assistance of counsel for his defense." 25 U.S.C. § 1302(6) (2006).[1] Second, "[n]o Indian Tribe . . . shall . . . deny to any person within its jurisdiction . . . liberty or property without due process of law." *Id.* § 1302(8). Finally, "[n]o Indian tribe . . . shall . . . impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year [or] a fine of $5,000, or both." *Id.* § 1302(7).

Section 1302 does not waive tribal sovereign immunity and does not provide a civil cause of action in federal court against tribal officials. *See Santa Clara Pueblo v.*

---

[1] Since Mr. Valenzuela's conviction, § 1302 has been amended. *See* Pub. L. 111-211, 124 Stat. 2279. The citations herein are to the version of the statute in effect at the time of Mr. Valenzuela's conviction.

*Martinez*, 436 U.S. 49, 59 (1978). Instead, tribal members have only one avenue to seek relief in federal court for violations of § 1302—filing a petition for writ of habeas corpus pursuant to 25 U.S.C. § 1303. *See White v. Pueblo of San Juan*, 728 F.2d 1307, 1311 (10th Cir. 1984) ("The only remedy in federal courts expressly authorized by Congress in the ICRA is a writ of habeas corpus."). Section 1303 states: "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." We have recognized that "[t]he 'detention' language in § 1303 is analogous to the 'in custody' requirement contained in the [other] federal habeas statute[s]." *Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1279 n.1 (10th Cir. 2006).

B. *Factual Background*

On July 29, 2007, Mr. Valenzuela was arrested after an incident on the Nation's reservation that resulted in two deaths. Mr. Valenzuela was indicted on several counts for violating the Nation's criminal code.

On June 24, 2008, Mr. Valenzuela appeared pro se in the Tohono O'odham Judiciary Court and pled guilty to one count of conspiracy, two counts of aggravated assault, and one count of misuse of a weapon. In his written plea agreement, Mr. Valenzuela waived the right to appeal his convictions and sentence. In exchange for his plea, the Nation dismissed several charges against Mr. Valenzuela.

On June 25, 2008, the tribal court accepted Mr. Valenzuela's plea and sentenced him to 1,260 days of imprisonment—180 days for the conspiracy count and 360 days for each of the other three counts. The Nation sent Mr. Valenzuela to the McKinley County

4

Detention Center—a state jail located in Gallup, New Mexico—to serve his sentence.

### C. *Procedural Background*

On November 23, 2010, Mr. Valenzuela filed a petition for writ of habeas corpus in federal district court pursuant to 25 U.S.C. § 1303. When Mr. Valenzuela filed his petition, he was in custody at the McKinley County Detention Center. Mr. Valenzuela included Steve Silversmith, the warden of the McKinley County Detention Center, and the Nation as respondents to his petition.[2] Frank Hecht, the corrections administrator for the Nation, was later entered as a respondent to replace the Nation.[3]

In his petition, Mr. Valenzuela challenged his convictions and sentence on four grounds. First, he asserted that the Nation violated his right to due process by imposing a sentence in excess of ICRA's statutory maximum. Second, he argued that the Nation violated his right to counsel under ICRA. Third, he alleged that the Nation deprived him of procedural due process when it convicted him. Finally, he contended that his incarceration in an off-reservation jail violated the Constitution and ICRA.

On January 5, 2011, Mr. Silversmith and Mr. Hecht (collectively the "Appellees") moved to dismiss Mr. Valenzuela's § 1303 petition. They argued that dismissal was appropriate because Mr. Valenzuela had not exhausted his tribal court remedies before

---

[2] On appeal, Mr. Silversmith contends that he is no longer a proper party to Mr. Valenzuela's § 1303 petition because Mr. Valenzuela has been released from custody. Because we affirm the district court's order dismissing Mr. Valenzuela's § 1303 petition, we need not and do not address this issue.

[3] Joseph Delgado has succeeded Mr. Hecht as corrections administrator for the Tohono O'odham Nation and has been automatically substituted as a party to this appeal. *See* Fed. R. App. P. 43(c)(2).

5

filing his petition in federal court. On February 16, 2011, a federal magistrate judge recommended granting the Appellees' motion to dismiss.

On March 3, 2011, Mr. Valenzuela filed objections to the magistrate judge's recommendation. Mr. Valenzuela argued that exhaustion is not required in the § 1303 context. Alternatively, he argued that he had exhausted his tribal remedies or that exhaustion was futile.

On March 11, 2011, while Mr. Valenzuela's § 1303 petition was still pending, he completed his sentence and was released from prison. On April 5, 2011, the magistrate judge ordered the parties to file briefs regarding whether Mr. Valenzuela's release had rendered his § 1303 petition moot. On September 1, 2011, the magistrate judge recommended dismissing Mr. Valenzuela's petition because he had failed to exhaust tribal remedies and, alternatively, because his release had rendered his petition moot. Mr. Valenzuela filed timely objections to the magistrate judge's recommendations. The district court overruled the objections, adopted the magistrate judge's recommendations, and dismissed Mr. Valenzuela's petition with prejudice.

Mr. Valenzuela filed a timely appeal challenging the district court's dismissal of his § 1303 petition.

## II.  **DISCUSSION**

Mr. Valenzuela argues that the district court erred for two reasons when it dismissed his § 1303 petition. First, he contends that the district court erred in concluding that his claims are moot. Second, he argues that the district court erred in dismissing his claims for failure to exhaust his tribal remedies.

6

A. *Choosing the Threshold Issue*

The mootness issue implicates our subject matter jurisdiction. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). The Supreme Court has instructed that federal courts may not assume they have subject matter jurisdiction for the purpose of deciding claims on the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998).

But "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Federal courts may choose to avoid difficult subject matter jurisdiction questions and dispose of a case on a "threshold, nonmerits issue," such as *forum non conveniens* grounds, so long as resolving the issue "does not entail any assumption by the court of substantive law-declaring power." *Id.* at 433, 436 (quotations omitted).

Mr. Valenzuela's habeas petition is not one of the "mine run of cases" involving "no arduous inquiry" into subject matter jurisdiction. *See id.* at 436 (quotations omitted). The mootness question presents difficult issues such as whether tribal court convictions are entitled to a presumption of collateral consequences and whether federal courts have authority under 25 U.S.C. § 1303 to vacate tribal court convictions. We may avoid these difficult issues by disposing of Mr. Valenzuela's appeal on a threshold issue without reaching the merits. *See Kelley v. City of Albuquerque*, 542 F.3d 802, 817 n.15 (10th Cir. 2008) (choosing threshold, nonmerits determination over difficult "first-impression jurisdictional question"); *Long Term Care Partners, LLC v. United States*, 516 F.3d 225,

7

233 (4th Cir. 2008) (deciding case on nonjurisdictional, nonmerits issue "without first surmounting the jurisdictional hurdle of standing").

The district court's determination that Mr. Valenzuela failed to exhaust tribal court remedies is such a threshold, nonmerits issue. *See Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005) (describing denial of a habeas petition for failure to exhaust as a "ruling which precluded a merits determination"); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) (explaining that the tribal exhaustion rule allows for record development in tribal court "before either the merits or any question concerning appropriate relief is addressed"); *see also Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008) ("[E]xhaustion is nothing more than a precondition to an adjudication on the merits."). Because we agree with the district court that Mr. Valenzuela was required, but failed, to exhaust his tribal court remedies before filing his § 1303 petition, we take that "less burdensome course" to dispose of his appeal. *Sinochem*, 549 U.S. at 436.

## B. *Exhaustion*

The district court concluded that Mr. Valenzuela had failed to exhaust his claims in tribal court. Our review of the district court's exhaustion decision is de novo. *See Robinson v. Golder*, 443 F.3d 718, 720 (10th Cir. 2006).

Mr. Valenzuela argues that the district court erred for two reasons when it dismissed his claims for failure to exhaust. First, he contends that petitioners are not required to exhaust their claims in tribal court before asserting them in a § 1303 petition. Second, he argues that even if exhaustion is generally required in the § 1303 context, he did exhaust his claims or, alternatively, exhaustion was futile. We address his arguments

8

in turn.

### 1. *Exhaustion and § 1303*

Unlike other federal habeas corpus statutes, § 1303 does not state that petitioners must exhaust their claims before litigating them in federal court. *Compare* 28 U.S.C. § 2254, *with* 25 U.S.C. § 1303. Federal courts have recognized, however, a non-statutory exhaustion requirement that generally applies to challenges to tribal court authority. The tribal exhaustion rule "provides that, absent exceptional circumstances, federal courts typically should abstain from hearing cases that challenge tribal court [authority] until tribal court remedies, including tribal appellate review, are exhausted." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1149 (10th Cir. 2011); *see also Texaco, Inc. v. Zah*, 5 F.3d 1374, 1378 (10th Cir. 1993) ("When the activity at issue arises on the reservation, [exhaustion] policies almost always dictate that the parties exhaust their tribal remedies before resorting to [a] federal forum.").

The tribal exhaustion rule is based on "principles of comity" and is not a jurisdictional prerequisite to review. *See Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006). It applies "[r]egardless of the basis for [federal] jurisdiction," *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987), and serves several purposes. First, it reinforces Congress's strong interest in promoting tribal sovereignty, including the development of tribal courts. *Nat'l Farmers*, 471 U.S. at 856. Second, it assists "the orderly administration of justice in . . . federal court[s] . . . by allowing a full record to be developed in the [t]ribal [c]ourt before either the merits or any question concerning appropriate relief is addressed [in federal court]." *Id.* Third, the rule gives a tribal court

9

"a full opportunity . . . to rectify any errors it may have made." *Id.* All of these purposes support application of the tribal exhaustion rule to § 1303 petitions.

Despite § 1303's lack of an express exhaustion requirement, this court has suggested that § 1303 petitioners must exhaust tribal court remedies. *See Dry v. CFR Court of Indian Offenses for Choctaw Nation*, 168 F.3d 1207, 1209 (10th Cir. 1999) (reversing and remanding the dismissal of a habeas corpus petition for "the district court [to] consider, in the first instance, whether Petitioners have sufficiently exhausted their tribal remedies"); *Harvey ex rel. Chavez v. Star*, 1996 WL 511586, at *1 n.2 (10th Cir. Sept. 10, 1996) (unpublished) (stating that "the exhaustion requirement controlling our disposition under [28 U.S.C. ] § 1331 applies as well to § 1303"); *cf. Tillett v. Lujan*, 931 F.2d 636, 639-40 (10th Cir. 1991) (requiring exhaustion of tribal remedies for a plaintiff who filed an action challenging the jurisdiction of a Court of Indian Offense, in part, as a violation of her rights under ICRA).

Other federal courts have held that the tribal exhaustion rule requires tribal members to exhaust claims in tribal court before asserting them in a § 1303 petition. *See, e.g.*, *Jeffredo v. Macarro*, 590 F.3d 751, 756 (9th Cir. 2009) ("[A] litigant must first exhaust tribal remedies before properly bringing a petition for writ of habeas corpus [pursuant to § 1303]."); *Necklace v. Tribal Court of Three Affiliated Tribes*, 554 F.2d 845, 846 (8th Cir. 1977) ("[T]ribal remedies must ordinarily be exhausted before a claim is asserted in federal court under [§ 1303]."); *see also* Cohen, *supra*, § 9.09 ("All federal courts addressing the issue mandate that two prerequisites be satisfied before they will hear a habeas petition filed under ICRA: The petitioner must be in custody, and the

10

petitioner *must first exhaust tribal remedies*." (emphasis added)).

We conclude that the purposes underlying the tribal exhaustion rule support applying the rule to § 1303 petitions. We note, however, that "[a]s a prudential rule based on comity, the [tribal] exhaustion rule is not without exception." *Crowe & Dunlevy*, 640 F.3d at 1150. Specifically, the Supreme Court has explained that exhaustion of tribal remedies is not required where (1) "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith," (2) "the action is patently violative of express jurisdictional prohibitions," or (3) "exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Nevada v. Hicks*, 533 U.S. 353, 369 (2001) (quotations omitted). None of these circumstances applies here.

### 2. *Mr. Valenzuela's Failure to Exhaust*

The district court concluded that Mr. Valenzuela had failed to exhaust his claims because he did not file a petition for a writ of habeas corpus in tribal court. Mr. Valenzuela argues that the district court was incorrect. He asserts that he exhausted all tribal court remedies and that "[a]ny further attempts to exhaust tribal remedies would be futile and result in irreparable damage." Aplt. Br. at 18.

First, Mr. Valenzuela argues that he waived his right to appeal in his written plea agreement and therefore had no tribal court remedies to exhaust. We agree with the district court that Mr. Valenzuela's appeal waiver does not excuse his failure to pursue habeas corpus relief in the tribal court. The appeal waiver did not expressly waive Mr. Valenzuela's right to collaterally attack his conviction in tribal court. *See United States*

11

*v. Cockerham*, 237 F.3d 1179, 1181-83 (10th Cir. 2001) (holding that waivers of § 2255 collateral attack rights must be expressly stated to be enforceable). That step was necessary to exhaust Mr. Valenzuela's claims.

Next, Mr. Valenzuela contends that his failure to file a habeas petition in tribal court should be excused because he had no appointed counsel and "did not know of the existence of any option to file a tribal court petition." Aplt. Br. at 16-17. Again, we agree with the district court that this argument lacks merit. At the time Mr. Valenzuela pled guilty, ICRA did not provide the right to appointed counsel. *See* 25 U.S.C. § 1302 (2006); *Poodry*, 85 F.3d at 882. In addition, ignorance of the law is not a valid excuse for failing to satisfy procedural requirements. *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." (quotations omitted)).

Finally, Mr. Valenzuela notes that the Nation's code provides that "'[a] party *may* file with the [tribal] court a petition for a writ of habeas corpus.'" 6 Tohono O'odham Code, ch. 3, § 10, R. 24 (emphasis added). He contends that this language is permissive, not mandatory, and that he therefore was not required to pursue a writ of habeas corpus in tribal court.

But whether the Nation's habeas corpus provision is permissive or mandatory is beside the point. Such relief was *available* to Mr. Valenzuela. Under the tribal exhaustion rule, "[u]ntil petitioners have exhausted the remedies *available to them in the Tribal Court system*, it [is] premature for a federal court to consider any relief." *Nat'l*

12

*Farmers*, 471 U.S. at 857 (emphasis added) (citation omitted); *see Superior Oil Co. v. United States*, 798 F.2d 1324, 1329 (10th Cir. 1986) ("[A]ll available tribal court remedies must first be exhausted."). Thus, before filing his § 1303 petition, Mr. Valenzuela was required to exhaust the Nation's available habeas relief to allow the tribal court "a full opportunity . . . to rectify any errors it may have made." *Nat'l Farmers*, 471 U.S. at 857.

Because Mr. Valenzuela did not exhaust tribal remedies that were available to him, we affirm the district court's dismissal of his petition.[4]

### III.    CONCLUSION

For the foregoing reasons, we affirm the district court's order dismissing Mr. Valenzuela's § 1303 petition. Because our decision relies on Mr. Valenzuela's failure to exhaust, we remand to the district court to dismiss Mr. Valenzuela's § 1303 petition without prejudice. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005) ("[A] dismissal based on lack of exhaustion should ordinarily be without prejudice.").

---

[4] Mr. Valenzuela argues that "[s]hould this [c]ourt find that exhaustion . . . is not met, the proper cure would [be] to stay the federal habeas proceeding." Aplt. Br. at 18. When a habeas petitioner challenges a state conviction or sentence, "stay and abeyance is only appropriate when . . . there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). We see no reason to depart from this rule in the tribal exhaustion context. Mr. Valenzuela has not demonstrated that there was good cause for his failure to exhaust. We therefore see no basis for a stay and abeyance.