**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 7, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

KONNA C. OVIATT; EDSON G.
GARDNER; LYNDA M.
KOZLOWICZ; ATHENYA SWAIN,

Plaintiffs - Appellants,

v.

WILLIAM REYNOLDS, in his
official capacity as Judge of the Ute
Trial Court; SHAUN CHAPOOSE;
EDRED SECAKUKU; TONY
SMALL; BRUCE IGNACIO;
CUMMINGS J. VANERHOOP;
RONALD WOPSOCK; CLEVE
HATCH,

Defendants - Appellees.
_____

No. 17-4124
(D.C. No. 2:16-CV-01008-RJS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

---

[*]     The parties do not request oral argument, and it would not materially help us to decide this appeal. As a result, we are deciding this appeal based on the briefs. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

This appeal involves jurisdiction over claims against tribal officials. Some or all of the four plaintiffs are lay advocates in the Ute Tribe. The Tribe allegedly ordered

- the plaintiffs' removal from tribal buildings and tribal court and

- the arrest and incarceration of the plaintiffs.

As a result of these orders allegedly being carried out, the plaintiffs sued certain tribal officials under the Indian Civil Rights Act and United States Constitution, alleging that the officials had violated the Fourth Amendment by incarcerating and searching the plaintiffs.[1] The district court dismissed the action for lack of jurisdiction, and we affirm.

Two of the plaintiffs have also requested appointment of the U.S. Attorney as counsel in this appeal. Exercising our discretion, we deny the request.

I.    **We deny the motion to appoint the U.S. Attorney as counsel.**

After the appeal was fully briefed, two plaintiffs (Mr. Edson Gardner and Ms. Lynda Kozlowicz) moved for appointment of the U.S. Attorney to represent them. The motion was grounded in 25 U.S.C. § 175, which

---

[1]    In the second amended petition, the plaintiffs also claimed a hostile work environment and retaliation in violation of the First Amendment. On appeal, however, the plaintiffs do not address these claims.

2

authorizes the U.S. Attorney to represent Indians on allotted lands. But, as the plaintiffs acknowledge, appointment under the statute is not mandatory. *See Siniscal v. United States*, 208 F.2d 406, 410 (9th Cir. 1953) ("We think 25 U.S.C.A. § 175 is not mandatory . . . ."); *see also* Thad Blank, *Time to Recommit: The Department of Justice's Indian Resources Section, the Trust Duty, and Affirmative Litigation*, 48 Idaho L. Rev. 391, 409 (2012) ("The courts have held that 25 U.S.C. § 175 does not create any statutory obligation that the DOJ participate in litigation on behalf of tribal governments."). Instead, we exercise discretion in deciding whether to appoint the U.S. Attorney. *See Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1481 (D.C. Cir. 1995) (recognizing that 25 U.S.C. § 175 imposes only a discretionary duty of representation); *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1553 (9th Cir. 1994) ("The United States has discretion to represent the individual Indian allottees under 25 U.S.C. § 175.").

We exercise discretion to deny the requested appointment for two reasons.

First, the plaintiffs have sued Indian officials who enjoy an equal right to representation by the U.S. Attorney. The U.S. Attorney could not ethically represent both sides of the suit.

3

Second, the plaintiffs waited too long to seek appointment. They did not ask for appointment of the U.S. Attorney in district court and asked in this court only after the appeal had already been fully briefed. Appointment of the U.S. Attorney would require the court to scrap the existing briefs and start over, which would unfairly burden the defendants and create unwarranted delay.

For both reasons, we deny the motion to appoint the U.S. Attorney for Mr. Gardner and Ms. Kozlowicz.

## II.    The district court lacked subject-matter jurisdiction.

The district court dismissed this action for lack of subject-matter jurisdiction. We review jurisdiction de novo. *Ute Indian Tribe v. Lawrence*, 875 F.3d 539, 541 (10th Cir. 2017).

The plaintiffs bear the burden to establish subject-matter jurisdiction. *Merida-Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). To satisfy their burden, the plaintiffs rely on the Indian Civil Rights Act and 28 U.S.C. § 1331. This reliance is misguided. The Indian Civil Rights Act authorizes relief in the form of a writ of habeas corpus. *Valenzuela v. Silversmith*, 699 F.3d 1199, 1202 (10th Cir. 2012). But habeas relief is limited to individuals who are detained when the petition is filed, and the plaintiffs have not alleged they were detained when they filed the habeas

4

petition. And to otherwise invoke 28 U.S.C. § 1331, the plaintiffs must invoke a colorable basis for a federal claim. In our view, the plaintiffs have not alleged a colorable claim under the Indian Civil Rights Act or any other federal provision.

## A. The Indian Civil Rights Act

Under the Indian Civil Rights Act, the plaintiffs could pursue habeas relief only "to test the legality of [their] detention." 25 U.S.C. § 1303; *see Broomes v. Ashcraft*, 358 F.3d 1251, 1254 (10th Cir. 2004) (restricting habeas relief to state prisoners who are in custody when the petition is filed), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010). We consider the plaintiffs "detained" only if they were subject at the time to "a severe actual or potential restraint on liberty." *Jeffredo v. Macarro*, 599 F.3d 913, 919 (9th Cir. 2010) (internal quotation marks omitted); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880 (2d Cir. 1996).

The plaintiffs have alleged past arrests and incarceration. But they do not allege that they were under arrest or incarcerated when they sought habeas relief.

Instead, the plaintiffs argue that they were "banished," relying on the Second Circuit's opinion in *Poodry v. Tonawanda Band of Seneca Indians*,

5

85 F.3d 874 (2d Cir. 1996). We have not decided whether banishment satisfies the statutory requirement of detention. *See Walton v. Tesuque Pueblo*, 443 F.3d 1274, 1279 n.2 (10th Cir. 2006) (declining to decide whether banishment of a non-Indian from tribal lands constitutes detention under 25 U.S.C. § 1303). But even in the Second Circuit, a tribal member is considered "detained" only when permanently banished from the tribe. *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 714 (2d Cir. 1998).

On appeal, the plaintiffs use the word "banishment." But in district court, the plaintiffs did not allege banishment. Nor have they presented evidence of a permanent prohibition from entering the Ute Tribe's land. As a result, even if we were to follow *Poodry*, the plaintiffs' new allegation of "banishment" would not satisfy the detention requirement. *See Walton*, 443 F.3d at 1279 n.2 (rejecting a claim of banishment based on the plaintiff's lack of evidence notwithstanding his allegation of banishment in a complaint and affidavit); *Tavares v. Whitehouse*, 851 F.3d 863, 875 (9th Cir. 2017) ("[W]e do not need to decide whether to adopt *Poodry*'s conclusion that tribal banishment orders amount to 'detention' under § 1303, because even under *Poodry*'s logic, the Second Circuit limited habeas jurisdiction only to permanent banishment orders, not temporary exclusion orders like those in this case.").

6

The plaintiffs appear to rely on their exclusion from the tribal office, court, and family-services building. Second Am. Pet. ¶ 14. But exclusion from these facilities does not constitute permanent banishment. The Second Circuit addressed a similar issue in *Shenandoah v. United States Department of Interior*, 159 F.3d 708, 714 (2d Cir. 1998). There the plaintiffs alleged that they had

> [been] suspended or terminated from employment positions, lost their voices within the Nation's governing bodies, lost health insurance, [been] denied admittance into the Nation's health center, lost quarterly distributions paid to all Nation members, [been] banned from various businesses and recreational facilities such as the casino, Turning Stone park, the gym, and the Bingo hall, [been] stricken from Nation membership rolls, [been] prohibited from speaking with a few other Nation members, and [been deprived of] Nation mailings.

*Id.* (brackets and internal quotation marks omitted). Faced with these allegations, the Second Circuit concluded that the plaintiffs had not faced a severe actual or potential restraint on their liberty, stating: "In contrast [to the *Poodry* plaintiffs], plaintiffs in the instant case have not alleged that they were banished from the Nation, deprived of tribal membership, convicted of any crime, or that defendants attempted in anyway [sic] to remove them from Oneida territory." *Id.*

Though the plaintiffs use the word "banishment," they have not alleged any facts creating a colorable basis for jurisdiction under the Indian Civil Rights Act.

**B.    28 U.S.C. § 1331**

The plaintiffs also invoke federal-question jurisdiction based on 28 U.S.C. § 1331. This section does not provide subject-matter jurisdiction.[2]

Section 1331 creates federal jurisdiction for a civil action arising under the United States Constitution, a federal law, or a treaty.[3] 28 U.S.C. § 1331. The plaintiffs base their substantive claims not only on the Indian Civil Rights Act but also on the Fourth Amendment.

Generally, § 1331 creates federal jurisdiction over claims based directly on the United States Constitution. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). But § 1331 does not create jurisdiction when the constitutional claim is "wholly unsubstantial and frivolous." *Junior*

---

[2]    In district court, the plaintiffs also invoked 28 U.S.C. § 1343. But their appeal briefs do not address § 1343.

[3]    In their opening brief, the plaintiffs stated that jurisdiction under § 1331 can be based on a claim arising under federal common law. But the plaintiffs do not identify such a claim here, and we cannot discern a principle of federal common law underlying the plaintiffs' claims.

8

*Chamber of Commerce v. United States Jaycees*, 495 F.2d 883, 886 (10th Cir. 1974).

The constitutional claims here are frivolous because the Fourth Amendment does not bind Indian tribes. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56-57 (1978) ("[T]ribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."); *Valenzuela v. Silversmith*, 699 F.3d 1199, 1202 (10th Cir. 2012) ("Constitutional provisions that limit federal or state authority do not apply to Indian tribes . . . ."); *see also United States v. Schmidt*, 403 F.3d 1009, 1013 (8th Cir. 2005) (stating that "the fourth amendment does not apply to the conduct of Indian tribal officials in Indian territory"); *United States v. Becerra-Garcia*, 397 F.3d 1167, 1171 (9th Cir. 2005) (stating that the Fourth Amendment "does not directly apply to the conduct of tribal governments"). As a result, the plaintiffs lack a colorable Fourth Amendment claim against the Ute Tribe or its officials. *See Groundhog v. Keeler*, 442 F.2d 674, 678 (10th Cir. 1971) (holding that the district court lacked jurisdiction over a suit against a tribal official because the underlying constitutional challenge lacked a substantial basis).

To avoid this jurisdictional impediment, the plaintiffs argue that they have asserted *Bivens* claims against the tribal officials in their personal capacities rather than separate claims against the tribe itself.[4] But *Bivens* claims lie against federal officials, not tribal officials. *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). And the Constitution does not constrain tribal officials even when they are sued in their personal capacities. *Id.* As a result, federal jurisdiction is lacking even though the tribal officials were sued in their personal capacities.[5]

* * *

---

[4] In their reply brief, the plaintiffs flatly state that "[t]he Ute Tribe is not named as the defendant." Appellants' Reply Br. at 16. But in the second amended petition, the plaintiffs asserted official-capacity claims against members of the Ute Tribal Court, Ute Tribal Council, and the Ute Tribe Family Service. An official-capacity claim is generally considered the equivalent of a claim against the entity itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[5] The plaintiffs also argue that the tribe's sovereign immunity does not protect tribal officers sued in their personal capacities. We need not address this argument because jurisdiction would not exist even if the tribe's sovereign immunity were confined to claims against the tribe itself.

10

Because the district court lacked subject-matter jurisdiction, we affirm the dismissal.

Entered for the Court


Robert E. Bacharach
Circuit Judge